**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ANGEL ARGUETA ANARIBA, | |
| Plaintiff, | Case No. 24-cv-0767 (JMC) |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Angel Argueta Anariba initially brought this action against the United States, The Geo Group, Inc., and four Geo Group officers for torts he alleges that Defendants committed while he was detained in U.S. Immigration and Customs Enforcement (ICE) facilities in Louisiana and Mississippi.[1] Before any Defendant answered his amended complaint, he and the Geo Defendants filed a joint motion to sever his assault and battery claims and transfer them to the United States District Court for the Western District of Louisiana. The Court granted that motion—admittedly, without input from the United States.

The United States now asks the Court to transfer Argueta Anariba's claims against it to the Western District of Louisiana as well, so that the entire case can be litigated in the same forum. ECF 32. In the alternative, the United States moves the Court to reconsider its transfer order to give it the opportunity to weigh in before the Court decides whether only part of this case should proceed in another district. ECF 34. Argueta Anariba opposes both motions. ECF 36; ECF 37. For

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

1

a host of reasons, he prefers to litigate his federal tort claims in this Court while his assault and battery claims are resolved in Louisiana.

The Court agrees with the United States that transfer is warranted. Almost every claim against the United States includes the assault and battery as a predicate allegation. Given that overlap, it makes much more sense for the Parties to coordinate discovery and litigate their disputes in one court than to proceed on different tracks. And because none of the other factors that this Court must consider under 28 U.S.C. § 1404(a) weigh heavily enough against transfer to overcome that fact, the Court will **GRANT** the United States' motion to transfer. Its motion to reconsider is accordingly **DENIED** as moot.

## I.    BACKGROUND

Plaintiff Angel Argueta Anariba is a citizen and national of Honduras, who resides in Washington, D.C. ECF 12 ¶ 12. He spent seven years in ICE civil immigration detention, from December 2014 until April 2022. *Id.* ICE transferred him between many of its detention facilities, *id.* ¶¶ 19–20, but two are most relevant here: For about four months collectively in 2019 and 2020, ICE held Argueta Anariba at the Adams County Correctional Center (Adams County) in Mississippi. *Id.* ¶ 20. He was later detained at the Pine Prairie ICE Processing Center (Pine Prairie) in Louisiana from December 2020 until April 2022. *Id.* According to Argueta Anariba's amended complaint, ICE operates the Adams County facility under a contract it holds with private prison company CoreCivic and the Pine Prairie facility through a contract with The Geo Group, Inc. (Geo), also a private prison company. *Id.* ¶ 21. Both facilities are under the jurisdiction of ICE's New Orleans Field Office. *Id.* ¶ 23.

Argueta Anariba alleges that ICE and its contractors subjected him to "inhumane conditions of confinement" and "egregious mistreatment" while he was detained at the Adams County and Pine Prairie facilities. *Id.* ¶¶ 1, 3, 29. When Argueta Anariba complained about his

mistreatment, he was retaliated against. *Id.* ¶ 2. For example, after beginning a hunger strike to protest his conditions at Adams County, ICE and its contractors punished him by placing him in prolonged solitary confinement. *Id.* ¶ 3. In solitary, corrections officers held him in a cell overflowing with sewage, denied him access to water, and threatened him. *Id.* ¶ 36.

He alleges that he continued to experience "severe mistreatment" once transferred to Pine Prairie in retaliation for his complaints. *Id.* ¶ 44. Among other incidents and additional solitary confinement, *id.* ¶ 46, he alleges that in March 2022 a group of Geo officers violently assaulted him without justification and while he was handcuffed, *id.* ¶¶ 50–55. He sustained severe injury to his shoulder and cuts and bruises to his clavicle, wrists, and hands. *Id.* ¶ 56.

Argueta Anariba was released from ICE custody in 2022. *Id.* ¶ 68. He filed this suit in 2024 against the United States, Geo, and four Geo officers. *See* ECF 12. He brought assault and battery claims against the Geo Defendants for the March 2022 assault. *Id.* at 32–36. His amended complaint also included claims against the United States for negligence, negligent supervision, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process under the Federal Tort Claims Act (FTCA). *Id.* at 20–32. He alleges that the United States is responsible for the conduct of its employees and agents, namely the ICE officials responsible for his care in custody. *See id.* ¶ 70. He also alleges that the United States failed to ensure that Adams County and Pine Prairie followed applicable policies concerning conditions of confinement and use of force, failed to adequately supervise corrections officials, and abused process. *See e.g.*, *id.* ¶¶ 86, 118.

After Argueta Anariba filed his amended complaint, he and the Geo Defendants filed a joint motion to sever his assault and battery claims and transfer them to the United States District Court for the Western District of Louisiana. *See* ECF 31. Argueta Anariba and the Geo Defendants

did not confer with the United States before filing their joint motion and thus did not include the United States' position in their filing. *See id.*; ECF 34 at 3. The joint motion represented that Argueta Anariba's claims against the Geo Defendants are discrete and different from his claims against the United States. According to the motion, the assault and battery claims against the Geo Defendants concern only the March assault at the Louisiana facility, while Argueta Anariba's claims against the United States involve much broader ICE conduct in both Louisiana and Mississippi. ECF 31 at 2. The joint motion also acknowledged that the assault and battery claims arise out of Louisiana state law and that the witnesses and evidence relevant to those claims are likely located in the Western District of Louisiana. *Id.* at 4. The Court granted the motion. *See* August 20, 2024 Minute Order.

The Court now considers the United States' motion to transfer the claims against it to the Western District of Louisiana, which Argueta Anariba opposes.

## II.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). Section 1404 provides the Court with a mechanism to transfer a case, even in cases where venue is proper in the transferor court, in order "to prevent the waste 'of time, energy and money[,]' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Con't Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26-27 (1960)).

The Court employs a two-step analysis to determine whether a case should be transferred. First, the Court determines if the case could have been brought in the transferee district. *S. Utah Wilderness All. v. Lewis*, 845 F. Supp. 2d 231, 234 (D.D.C. 2012). If so, the Court turns to an analysis of the public and private interests supporting transfer. The public-interest factors include:

(1) "the transferee's familiarity with the governing laws" and the pendency of related litigation; (2) "the relative congestion of the calendars of the transferor and transferee courts;" and "(3) the local interest in having local controversies decided at home." *Pres. Soc'y of Charleston v. U.S. Army Corps of Eng'rs*, 893 F. Supp. 2d 49, 54 (D.D.C. 2012). The private-interest factors include: (1) "the plaintiff's choice of forum;" (2) "the defendant's choice of forum;" (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties;" (5) "the convenience of the witnesses;" and (6) "the ease of access to sources of proof." *Id.*

District courts have broad discretion to decide whether to transfer a case, and the motion turns on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Finally, the movant bears the burden of demonstrating that transfer is appropriate. *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

## III.    ANALYSIS

The Parties agree that this suit could have been brought in the Western District of Louisiana. *See* ECF 32 at 6–7; ECF 37 at 11. The Court agrees. The FTCA provides venue in either the district where the plaintiff resides or the district where "the act or omission complained of occurred." 28 U.S.C. § 1402(b). Argueta Anariba alleges that tortious conduct occurred in Louisiana. The Court therefore moves to the second part of the analysis: weighing the public and private-interest factors for and against transferring the case. The Court finds that those factors warrant transfer.

### A. The public-interest factors weigh in favor of transferring the case.

The first public-interest factor—the transferee court's familiarity with the governing law and pendency of related litigation—weighs in favor of transfer. Argueta Anariba brings his claims against the United States under the FTCA. The Western District of Louisiana is presumed to be

equally familiar with federal law. *See, e.g.*, *Wolfram Alpha LLC v. Cuccinelli*, 490 F. Supp. 3d 324, 335 (D.D.C. 2020). But tort claims under the FTCA are analyzed under the substantive tort law of the state where the tort happened. *See, e.g.*, *Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000). Almost all the conduct described in Argueta Anariba's amended complaint occurred in either Louisiana or Mississippi. The Court takes Argueta Anariba's point that federal courts are routinely called upon to apply the law of other states, and that this case does not appear to involve any novel issues, but the Court still recognizes that the Western District of Louisiana has more opportunity to apply and consider Louisiana state law than this Court does.

Then there is the fact that the Court has already transferred a portion of this case to the Western District of Louisiana. To be sure, Argueta Anariba's FTCA claims against the United States are broader than his assault and battery claims against the Geo Defendants. His FTCA claims also seek to hold the United States liable for the conditions at Adams County and Pine Prairie, including for abuse of process. But his claims against all Defendants are undoubtedly related. All but one of Argueta Anariba's claims against the United States involve the alleged assault and battery as a significant predicate allegation. *See* ECF 12 ¶¶ 75a–b (referencing use of force policies and alleging as basis for FTCA negligence claim the United States' failure "to ensure that officers in the facility followed the Force Policy in their interactions with Mr. Argueta Anariba, including excessive use of force (Louisiana only)"), 86a, c (alleging that the United States negligently failed to supervise its employees in connection with the use of excessive force in Louisiana), 97c (alleging that the United States is liable for Plaintiff's intentional infliction of emotional distress resulting from him being "assaulted while following all directions and handcuffed (Louisiana only)"), 108 a–b (citing Defendant's failure to care for Plaintiff in accordance with use of force policies and failure "to exercise adequate care in restraining Plaintiff, including use of excessive

6

force (Louisiana only)" as factual basis for FTCA negligent infliction of emotional distress claim). Because of this overlap, discovery on Argueta Anariba's FTCA claims against the United States will necessarily concern the assault and battery, and any court presiding over his FTCA claims will have to resolve legal issues related to that incident as well. Indeed, the United States represents that it may file a third-party complaint against the Geo Defendants, *see* ECF 34 at 6, which further entangles the claims and parties together. It makes much more sense for one court to preside over these related claims to avoid duplicative proceedings, cumulative discovery, and inconsistent rulings or judgments.

The Court acknowledges that this case may be different from others in which courts have considered the presence of a related case as a basis for transfer. Plaintiff filed his case here first and later filed a joint motion to transfer only a portion of the case to another district. So, the Western District of Louisiana has not had a long pending related case that makes it more familiar with the relevant issues than this Court. The litigation there is in its early stages; discovery does not appear to have started. *See generally Argueta Anariba v. USA et al.*, No. 24-CV-1216 (W.D. La.). The Court also recognizes that the Defendants are different parties. But the same public interest considerations that make the presence of a related case a significant factor for transfer—avoiding duplication and inconsistent rulings and judgments—apply. Those public interest considerations are best served by having these related claims resolved in one forum. And given the Parties' suggestion that this Court may not have personal jurisdiction over the Geo Defendants, ECF 37 at 18, this Court is not the forum that can accomplish that task.

The second public-interest factor—the relative congestion of the transferor and transferee courts—is neutral. The Parties agree that this District and the Western District of Louisiana are similarly congested. ECF 32 at 12; ECF 37 at 23.

The final public-interest factor, the local interest in deciding local controversies at home, also weighs in favor of transfer—but only slightly. Certainly, the federal government's treatment of those in its custody is an important issue nationwide. But this case challenges specific conduct that happened outside of this district—unlawful conduct at detention facilities that, according to the amended complaint, fall under the jurisdiction of the ICE field office in New Orleans, Louisiana. ECF 12 ¶ 23. In fact, in discussing the assault and battery claims that form at least part of the bases of his FTCA claims, Argueta Anariba previously acknowledged that "Louisiana and its citizenry have a keen interest in deciding this local dispute on its 'home' turf." ECF 31 at 4. That being said, the Court recognizes that Argueta Anariba is not a Louisiana resident. ECF 12 ¶ 12. He was in the custody of the United States, transferred across the country between a network of federal detention facilities, *see id.* ¶¶ 20, n.7, and apparently has no connection to Louisiana outside of this case. Those factors reduce the extent of Louisiana's local interest in this matter. *See, e.g.*, *Aiken v. Dir. of Fed. Bureau of Prisons*, No. 20-CV-2091, 2021 WL 1428963, at *9 (D.D.C. Apr. 15, 2021) (finding federal defendants "overstate S.D.W.V's local interest in resolving this controversy" because the facility at issue was part of a "nationwide BOP federal prison system" and plaintiff was not a "fully integrated member[] of the S.D.W.V. community"). But the fact that much of what is alleged in the amended complaint happened while Argueta Anariba was detained in Louisiana ultimately tilts the scale in favor of transfer.

Accordingly, the Court finds that the public-interest factors, on balance, weigh in favor of transfer.

**B. The private-interest factors weigh slightly in favor of transferring the case.**

The private-interest factors are more mixed, but together tip slightly in favor of transfer.

The first private-interest factor—the plaintiff's choice of forum— is generally entitled to deference. *See Trout Unlimited*, 944 F. Supp. at 17. Here, the United States argues that the Court

should give Argueta Anariba's preference less weight because his case does not have any real factual ties to this district. *See* ECF 32 at 5 (citing *Aftab v. Gonzalez*, 597 F.Supp.2d 76, 81 (D.D.C. 2009) (plaintiff's "choice of this district as a forum commands diminished deference" where "the claim involves identifiable relevant events occurring in the transferee district and virtually none in this district"); *Spotts v. United States*, 562 F. Supp 2d 46, 52 (D.D.C. 2008) ("[T]he deference normally given to a plaintiff's choice of forum is 'lessened when the plaintiff's forum choice lacks meaningful ties to the controversy and has no particular interest in the parties or subject matter.'")). As the Court has already recognized, much of the alleged conduct happened outside of this district and in Louisiana. He was held in Louisiana significantly longer than he was in Mississippi, ECF 12 ¶ 20, and some allegations in his amended complaint relate only to conduct that occurred in Louisiana, *see, e.g.*, *id.* at ¶¶ 75b, 86c, 97c, 108b. At most, Plaintiff can identify a handful of allegations in his amended complaint concerning policy failures or decision-making he believes came from ICE headquarters in this district. *See, e.g.*, *id.* ¶ 117.

The fact that most of the alleged conduct occurred outside of this district is certainly relevant to the Court's decision, but the Court still finds that this factor militates against transfer. Unlike in the cases that the United States relies upon, Plaintiff lives in this district. The Court thus cannot conclude that this district "has no particular interest in the parties." *Spotts*, 562 F. Supp 2d at 52; *see also, e.g.*, *Aiken*, No. 20-CV-2091, 2021 WL 1428963, at *5 (plaintiff's "residence in the District of Columbia gives her lawsuit a significant connection to this district"); *Ruffin v. United States*, No. 14-CV-761, 2015 WL 4622924, at *3 (D.D.C. July 31, 2015) ("If courts were never to give the District's returning citizens' choice of forum any weight in cases related to their incarceration, they would likely be routinely forced to litigate their claims in an unfamiliar and potentially distant forum."). And as another court aptly recognized, the FTCA's venue provision

9

permitting plaintiffs to bring suits in their home district "reflects a policy choice Congress made to not force individuals to travel outside their home district to bring FTCA suits." *K.O. by and through E.O. v. United States*, 651 F. Supp. 3d 331, 340 (D. Mass. 2023). Overall then, Plaintiff's choice of forum weighs against transfer.

The United States' choice of forum is also entitled to some deference because it has presented "legitimate reasons for preferring to litigate the case in the transferee district." *Gulf Restoration Network v. Jewell*, 87 F. Supp. 3d 303, 313 (D.D.C. 2015). It seeks to transfer this case to the district where the majority of the events occurred, where some of the conduct that forms the bases of the claims against it will be litigated, and also because it intends to file a third-party complaint against Co-Defendants in the already transferred case.

The Court also agrees with the United States that the third factor, which asks where the claims arose, weighs in favor of transfer. The Court has considered Argueta Anariba's argument that this factor is neutral at best because the challenged conduct occurred in multiple districts— D.C., Mississippi, and Louisiana—but still finds that the United States has the better argument. The Court has already recognized that the amended complaint does not include many allegations about conduct that took place in this district, and that most of Argueta Anariba's allegations concern events that occurred in Louisiana—where he was held the longest. *See supra* at 8–9.

That brings the Court to the remaining private-interest factors: convenience of the witnesses, the ease of access to sources of proof, and convenience of the parties. Here, the convenience of witnesses and ease of access to sources of proof are neutral. Each side represents that there are relevant witnesses who reside in the district for which they are advocating. Argueta Anariba identifies certain D.C.-based damages witnesses that he intends to rely upon. ECF 37 at 19. And the United States makes the obvious point that employees and officials with information

about what happened at the detention facilities likely live in Louisiana or Mississippi (which is closer to Louisiana than it is to D.C.). ECF 32 at 10. But the Court has no clue whether any of those witnesses would be unavailable to testify if required to travel outside their respective districts. *See, e.g.*, *Bederson v. United States*, 756 F. Supp 2d. 38, 49 (D.D.C. 2010) (recognizing that "[t]he convenience of the witnesses is considered only to the extent that the witnesses may actually be unavailable for trial in one of the fora.") (internal quotations and citations omitted). Additionally, given Plaintiff's allegations, there are probably more relevant documents housed in Louisiana than in this district. Argueta Anariba previously recognized that evidence relevant to the events at Pine Prairie is in Louisiana. ECF 31 at 4. But the Court has no reason to believe that these documents could not be managed and produced electronically or that it would otherwise be more difficult to access documentary evidence depending on where the case is litigated. *See Fanning v. CAPCO Contrs., Inc.*, 711 F. Supp. 2d 65, 70 (D.D.C. 2010) (explaining that "the location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and transported to any appropriate forum."). These considerations tend to cancel each other out.

The Court also finds that the convenience of the parties factor is largely neutral, although the Court takes seriously Argueta Anariba's representations that his physical health and limited resources make it more difficult for him to travel. ECF 37 at 16–17 (citing Argueta Anariba Declaration, ECF 37-1 ¶¶ 4–7). Despite the United States' argument that its attorneys in Louisiana are better suited to handle this case, the government could really defend this case anywhere. But again, the Court comes back to the fact that some of Argueta Anariba's claims have already been transferred to the Western District of Louisiana. He will undoubtedly be subject to deposition by the Geo Defendants about events that also relate to his claims against the United States, and may

later have to testify at a trial in Louisiana. The Court understands that his FTCA claims involve more conduct than his claims against the Geo Defendants, so combining these claims would result in a longer proceeding. But transferring the rest of this case to Louisiana would allow for the coordination of discovery so that the Geo Defendants and the United States could potentially depose Argueta Anariba in the same location. (Overlapping witnesses will appreciate the coordination of depositions). *See Fed. Hous. Fin. Agency v. First Tenn. Bank Nat'l Ass'n*, 856 F. Supp. 2d 186, 195 (D.D.C. 2012) (granting transfer where "transfer could facilitate the coordination of pretrial discovery") (internal quotations and citations omitted). The efficiency gained by coordinating the discovery and resolution of these claims leads the Court to find that transfer is appropriate.

*   *   *

On balance the public-interest and private-interest factors warrant transfer. This is especially so because the Court has already transferred a portion of Plaintiff's case to the Western District of Louisiana and agrees with the United States that it is more efficient for all of Plaintiff's claims to be resolved in the same proceeding. The Court therefore **GRANTS** Defendant's Motion to Transfer the Case to the United States District Court for the Western District of Louisiana, ECF 32, and **DENIES** as moot Defendant's Motion for Reconsideration, ECF 34.

**SO ORDERED.**

DATE: July 21, 2025

_____
Jia M. Cobb
U.S. District Court Judge

12